# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAMILLA YOUNGER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 13-1296 (RMC) |
| DISTRICT OF COLUMBIA PUBLIC SCHOOLS, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Camilla Younger was employed by the District of Columbia Public Schools for over eighteen years. In 2010, she was discharged after she allegedly failed to disclose that she continued to hold a part-time teaching position while on medical leave from her full-time teaching job. Proceeding *pro se*, Ms. Younger sues the D.C. Public Schools, the Chancellor of Public Schools, the Washington Teachers' Union, and thirty-one individuals for alleged age discrimination, retaliation for protected activity, defamation, breach of contract, breach of the covenant of good faith and fair dealing, wrongful termination in violation of public policy, and multiple statutory violations. Defendants move to dismiss, arguing that the Court either lacks jurisdiction or that Ms. Younger has failed to state a claim. For the reasons set forth below, the Court will dismiss all claims against the Washington Teachers' Union, and the Court will grant in part and deny in part the District of Columbia's Motion to Dismiss.

1

# I. FACTS

Ms. Younger served the D.C. Public Schools (DCPS) as a dual-certified art teacher and attendance officer from 1992 to 2010.[1] She holds a Bachelor of Arts degree in Fine Arts and a Master's degree in Administration and Supervision. Over her eighteen years with DCPS, Ms. Younger received multiple awards, including Teacher of the Year.

During the 2007-2008 school year, Ms. Younger was a full-time art teacher at Woodson Senior High School. In 2008, she also began working as a part-time evening teacher at Roosevelt S.T.A.Y. High School. Ms. Younger alleges that DCPS knew that she was teaching at two schools because she had discussed her full-time and part-time positions with Whitney Miller, Staffing Specialist in the DCPS Personnel Office, and because DCPS paid Ms. Younger from the same payroll office for both jobs. However, Ms. Younger concedes that her service at two DCPS high schools led to confusion regarding her proper placement for the 2008-2009 school year. *See* Am. Compl. [Dkt. 2] ¶ 35.

In 2008, DCPS closed Woodson Senior High School and moved its students to a temporary location during its construction of a new school. As relevant here, DCPS moved the 9th Grade classes at Woodson Senior High School to the "Woodson 9th Grade Academy Senior High School," which was located on the third floor of Ron Brown Middle School. Before leaving for summer vacation in 2008, Ms. Younger spoke to Ms. Miller to express her preference for teaching high school students during the construction. When she returned in the fall, however, it became clear that her only full-time teaching option was at the Woodson 9th Grade Academy located at Ron Brown Middle School. *See id.*

---

[1] The Court accepts facts from the Amended Complaint or, as clarified, from the parties' briefs. As the non-movant, Ms. Younger receives the benefit of all reasonable inferences, *see Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004), and the Court liberally construes her Amended Complaint because she is representing herself, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

Ms. Younger's experience at Woodson 9th Grade Academy from 2008-2009 was troubled. She alleges that she was subjected to unsafe working conditions, including "unbearable [] school violence . . . (kids fighting daily, violence against teachers, destruction of property, fires . . .)," and that she did not receive the institutional support necessary to teach students effectively. *Id.* ¶ 37. Ms. Younger further alleges that she was physically attacked by a male student in 2008. When she reported the assault to school administrators, the student was removed from her classroom for a few days and then allowed to return over Ms. Younger's objection; the student allegedly continued to harass and intimidate Ms. Younger for the remaining months of the school year. In a separate incident, another male student allegedly cornered Ms. Younger in her classroom and "stood so close [that she] could feel his body parts." *Id.* ¶ 40. Again, the student was removed from her class for a period of days, but then returned to Ms. Younger's classroom where he continued to harass her.

As soon as Ms. Younger became eligible for transfer to a different school, she applied to teach elsewhere. However, Darrin Slade, Principal of Woodson 9th Grade Academy, convinced Ms. Younger to return to the Academy and assured her that he would authorize an immediate transfer if her working conditions did not improve. Ms. Younger alleges that her working conditions worsened over the next school year. On September 1, 2009, she was "physically assaulted and injured by special education high school students with varied learning disabilities and emotional problems [who] . . . [ran] over [her] at the door, [and knocked] [her] to the floor," causing injuries that required her to take medical leave. *Id.* ¶ 42. Ms. Younger asked Principal Slade for an immediate transfer and applied for workers' compensation. She avers that Principal Slade balked at completing her application for workers' compensation and had to be directed by DCPS Chancellor Kaya Henderson to do so. Despite his prior assurances, Principal Slade did not authorize Ms. Younger's transfer request.

During the summer of 2010, Ms. Younger interviewed with several DCPS high school principals, including Tanishia Williams-Minor, incoming Principal at the Youth Academy Engagement High School. The parties dispute whether Ms. Williams-Minor offered Ms. Younger a position at the Youth Academy, but Ms. Younger maintains that she accepted a part-time position at the Youth Academy as an art teacher and attendance officer. *See id.* ¶ 45 (alleging that Ms. Williams-Minor introduced Ms. Younger to the Assistant Principal as her "new art teacher"). Ms. Younger informed Principal Williams-Minor of her part-time evening position at Roosevelt S.T.A.Y. High School, and she told Ms. Williams-Minor that she could not continuously climb stairs due to injuries that she had sustained at Woodson 9th Grade Academy; in response, Ms. Williams-Minor assured Ms. Younger that the Youth Academy could accommodate her part-time teaching schedule, and that she would not be required to climb stairs repeatedly. After Principal Williams-Minor and Ms. Younger met on multiple occasions and after Ms. Younger was assured that she had the job, Ms. Williams-Minor asked for the spelling of Ms. Younger's name, her address, and her date of birth for various personnel forms. *Id.* Ms. Younger alleges that "[w]hen [she] gave [Ms. Williams-Minor] [her] date of birth she was noticeably shocked, breathless (she place[d] her hand over her heart) and was speechless, and gasping for breath. Her facial expression and [demeanor] change[d]." *Id.* On the last day of the teacher transfer period and after Ms. Younger had declined other offers, Ms. Williams-Minor told Ms. Younger that she would not be hired at Youth Academy Engagement High School.

On August 16, 2010, Ms. Younger requested a meeting with Regina Youngblood, DCPS Director of Human Resources, and Traci Higgins, DCPS Director of Labor Management and Employee Relations, to discuss a transfer to a different school. Rather than discussing a transfer, however, Ms. Higgins asked Ms. Younger to sign a termination letter from DCPS for alleged dishonesty. The termination notice stated that Ms. Younger had worked part-time at

4

Roosevelt S.T.A.Y. High School while on medical leave from her full-time teaching position. Ms. Younger was sixty-three years old at the time of her termination, and she was replaced by two younger art teachers at Woodson 9th Grade Academy. On August 19, 2010, Ms. Younger filed a grievance under the Washington Teachers' Union (WTU) Collective Bargaining Agreement, but she complains that the Union failed to handle her grievance in a diligent and timely manner. From these events, Ms. Younger contends that she experienced "extreme economic[] hardship, humiliation, anxiety, worry, . . . and difficulty sleeping . . . ." *Id.* ¶ 55.

Ms. Younger filed her Complaint on August 27, 2013, *see* Compl. [Dkt. 1], and an Amended Complaint shortly thereafter, *see* Am. Compl. [Dkt. 2]. As against DCPS, Ms. Younger alleges a violation of her rights under the Age Discrimination in Employment Act (ADEA), 19 U.S.C. §§ 621 *et seq.*, breach of contract, breach of the covenant of good faith and fair dealing, wrongful termination in violation of public policy, retaliation, defamation, and various statutory violations. As against WTU, she alleges breach of the duty of fair representation, *see* Am. Compl. ¶ 55 ("WTU did not handle my case diligently and timely . . . . WTU is responsible for not following through with resolution of the grievance . . . ."), and violation of her rights under the ADEA.

On December 6, 2013, WTU and five individual Union Defendants[2] filed a motion to dismiss for failure to state a claim and lack of subject matter jurisdiction. *See* WTU Mot. to Dismiss [Dkt. 7]. The named D.C. Defendants[3] filed a motion to dismiss for failure to

---

[2] The WTU Motion to Dismiss was filed on behalf of the Washington Teachers' Union and present or former Union officials George Parker, Nathan Saunders, Elizabeth Davis, Candi Peterson, and Mary Collins (collectively, Union Defendants or WTU Defendants).

[3] The D.C. Motion to Dismiss was filed by the District of Columbia on behalf of DCPS, DCPS Chancellor Kaya Henderson, the D.C. State Superintendent of Education, John Davis, William Wilhoyte, Thomas Anderson, Terry DeCarbo, Mark King, Traci L. Higgins, Wendy Wen, Erin Pitts, Erica Smith, Peter Weber, Regina Youngblood, Jason Kamras, Whitney Miller, Crystal Jefferson, Darrin Slade, Richard Nyankori, Nathaniel Beers, Allie Thompson, Francis Morgan,

state a claim on January 30, 2014. *See* D.C. Mot. to Dismiss [Dkt. 13]. Ms. Younger opposed the motions to dismiss on May 7, 2014, and the motions were fully briefed on June 12, 2014.[4]

## II. LEGAL STANDARDS

The Court begins with the proposition that *pro se* pleadings are "'to be liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even though *pro se* filings must be construed liberally, the complaint must still "present a claim on which the Court can grant relief." *Chandler v. Roche*, 215 F. Supp. 2d 166, 168 (D.D.C. 2002) (citing *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

### A. Motion to Dismiss under Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement and an Article III requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and

---

Tanishia Williams-Minor, Principal Patton, Remidene Diakite, Mr. Wilson, Mr. Simms, and former Chancellor Michelle Rhee (collectively, D.C. Defendants).

[4] The Court ordered Ms. Younger to file her oppositions by January 13, 2014 (WTU), and February 28, 2014 (D.C.), respectively. Ms. Younger filed five motions for extension of time, which the Court granted either in whole or in part, to ensure that Ms. Younger, as a *pro se* plaintiff, had time to research and prepare her opposition briefs.

"[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction" (internal citations omitted)).

When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court reviews the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). A court may consider materials outside the pleadings to determine its jurisdiction. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

### B. Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. A complaint must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds for her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. The facts alleged "must be enough to raise a right to relief above the speculative level." *Id*.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508

F.3d 1052, 1059 (D.C. Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Id*. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

### III. ANALYSIS

Union Defendants move to dismiss the Amended Complaint for failure to state a claim, arguing that: (1) Ms. Younger has improperly raised a duty of fair representation claim against individual persons who were or are Union officials; (2) even if construed as a claim that WTU violated its duty of fair representation, Ms. Younger's claim is preempted by the Comprehensive Merit Personnel Act (CMPA), D.C. Code §§ 1-601.01 *et seq.*; (3) Ms. Younger did not file a discrimination charge against the Union, and therefore has failed to exhaust administrative remedies on her age discrimination claim; and (4) her remaining allegations are exceedingly vague and fail to provide Union Defendants with notice regarding the nature of the charges. Union Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks jurisdiction over Ms. Younger's defamation claim.

D.C. Defendants move to dismiss the Amended Complaint for failure to state a claim on six grounds: (1) Ms. Younger has failed to state a *prima facie* case under the ADEA; (2) her common law claims of breach of contract and breach of the covenant of good faith and fair dealing are preempted by the CMPA; (3) Ms. Younger has failed to state a claim for wrongful termination in violation of public policy; (4) Ms. Younger has failed to state a claim for retaliation; (5) DCPS is not a proper party to this lawsuit; and (6) Ms. Younger has not complied

8

with the notice requirements of D.C. Code § 12-309 on her common law claims. The Court will address each motion and claim in turn.

### A. Claims Against WTU

As against WTU, Ms. Younger alleges, in whole:

> Washington Teachers' Union – WTU on August 19, 2010 filed a grievance and request[ed] arbitration on my behalf, through the collective bargaining agreement. WTU did not quickly resolve my grievance against DCPS. WTU did not provide plaintiff with fair and equitable treatment.
>
> WTU did not handle my case diligently and timely. Several events have happened. I was told employees retired and files were lost. However, WTU is responsible for not following through with resolution of the grievance, DCPS lack of civil professionalism, and breach of contract.

Am. Compl. ¶¶ 54–55. The Court construes these paragraphs as alleging that WTU failed to fulfill its duty of fair representation.

#### 1. Duty of Fair Representation

The National Labor Relations Act of 1935 (NLRA), 29 U.S.C. §§ 151 *et seq.*, established bargaining rights for most private sector employees. However, the rights of State or District of Columbia employees to union representation and collective bargaining are established by State or District of Columbia law, just as the rights of federal employees to union representation and collective bargaining are established by the Federal Labor Relations Act, 5 U.S.C. §§ 7101 *et seq.* Of relevance here, certain District of Columbia employees are granted rights to union representation and collective bargaining under the Comprehensive Merit Personnel Act (CMPA), D.C. Code §§ 1-601.01 *et seq.* As a result, Ms. Younger's rights as a Union member and the process by which she might complain about WTU's handling of her grievance are governed by the D.C. Code.

9

Nonetheless, many of the principles of labor law have been developed under the NLRA and applied to the public sector. One such shared principle, the duty of fair representation, recognizes that a union owes a fiduciary duty to its members. *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967). A union breaches the duty of fair representation when it acts in bad faith with respect to its members, or when its conduct is arbitrary or discriminatory. *Id.* The CMPA provides that public sector unions owe D.C. employees a duty of fair representation by making a union's breach of its duty of fair representation an unfair labor practice and granting exclusive jurisdiction over such practices to the Public Employee Relations Board (PERB). *See* D.C. Code §§ 1-605.02(3); 1-617.04(b)(1); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 77–78 (D.D.C. 2007). The CMPA is "'plainly intended' to 'create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions—with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum.'" *McManus*, 530 F. Supp. 2d at 77 (quoting *District of Columbia v. Thompson*, 593 A.2d 621, 634 (D.C. 1991)). Here, the Amended Complaint is properly read as alleging that WTU violated its duty of fair representation by its dilatory handling of Ms. Younger's grievance. However, the CMPA requires that Ms. Younger bring her claims to PERB and, eventually perhaps, to D.C. Superior Court. *Id.* (citing D.C. Code §§ 1-606.03-616.62). This Court lacks jurisdiction over WTU's alleged breach of its duty of fair representation.

The Amended Complaint also alleges that individual Union Defendants George Parker, Nathan Saunders, Elizabeth Davis, Candi Peterson, and Mary Collins violated their duties of fair representation to Ms. Younger. But the Supreme Court has long since established that federal duty of fair representation claims cannot be brought against individual union

employees or agents, but instead must be brought against the union itself.[5] *See Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 247–48 (1962), *overruled on other grounds by Boys Mkts., Inc. v. Retail Clerk's Union*, 398 U.S. 235 (1970); *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 407 (1981). While the D.C. Code is not entirely clear as to whether duty of fair representation claims can be brought against individual Union representatives and agents, *see* D.C. Code § 1-617.04(b)(1) (providing that "[e]mployees, labor organizations, their agents, or representatives are prohibited from . . . [i]nterfering with, restraining, or coercing any employees or the District in the exercise of rights guaranteed by this subchapter"), the question must be presented to PERB in the first instance. Accordingly, the Court will dismiss any intended duty of fair representation claims against individual Union Defendants.

### 2. Age Discrimination

In her Opposition, Ms. Younger contends that WTU violated her rights under the ADEA because it was "complicit in the DCPS' discriminatory acts against her . . . [and] failed to protect her . . . by failing to diligently and timely handle her grievance, failing to follow through to resolution of her grievance, and losing her grievance file." Opp'n to WTU MTD at 15. This allegation presents two procedural defects.

First, the ADEA is clear that "[n]o civil action may be commenced by an individual . . . until 60 days *after a charge alleging unlawful discrimination has been filed* with the Equal Employment Opportunity Commission [EEOC] . . . ." 29 U.S.C. § 626(d)(1) (emphasis added). In other words, an ADEA plaintiff "must exhaust [her] administrative remedies" before filing suit in federal court. *Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998). The purpose of the administrative exhaustion requirement is

---

[5] Ms. Younger appears to concede this point in opposition, as she stated her intention to bring claims against WTU rather than its individual agents or employees. *See* Opp'n to WTU MTD [Dkt. 25] at 13.

to provide respondents with an opportunity to resolve matters internally before judicial resolution. *See Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011).

Ms. Younger concedes that she never filed a discrimination charge against WTU. *See* Opp'n to WTU MTD at 14 ("In the instant case, Plaintiff did not file with the EEOC an ADEA complaint against the WTU Defendants."). Instead, Ms. Younger relies on section 626(c)(1) of the ADEA to support her age discrimination claims against WTU. But while 29 U.S.C. § 626(c)(1) states that "[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter," *id.*, the filing of an EEOC charge remains a precondition to federal suit. *See* 29 U.S.C. § 626(d)(1) ("No civil action may be commenced by an individual . . . until . . . after a charge alleging unlawful discrimination has been filed with the [EEOC]."). Because Ms. Younger did not file a charge with the EEOC against the Union, the Court finds that Ms. Younger has failed to exhaust administrative remedies as required by the ADEA.

In addition, Ms. Younger failed to comply with the statute of limitations for any ADEA claim against WTU. It is true that labor unions are prohibited from violating the ADEA in their treatment of individual union members. *See* 29 U.S.C. § 623(c)(1) ("It shall be unlawful for a labor organization – (1) to exclude or to expel from its membership, or otherwise *to discriminate against, any individual because of his age*." (emphasis added)). To be timely, however, such a charge must have been filed within 300 days of when the discrimination first became known. *See* 29 U.S.C. § 626(d)(1)(B) (requiring a plaintiff in any state with laws prohibiting age discrimination and an agency charged with investigating such claims to file an administrative claim under the ADEA "within 300 days after the alleged unlawful practice occurred"). Ms. Younger failed to file a charge against WTU within the limitations period, and

12

thus, the Court finds that she has failed to state a claim against WTU for the alleged violation of her rights under the ADEA.

Nor has Ms. Younger alleged that she was improperly advised as to how or when to file an EEO charge, or that she was unaware of the statute of limitations. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued [her] judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by [her] adversary's misconduct into allowing the filing deadline to pass."); *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) (permitting equitable tolling where the defendant "misled [a plaintiff] about the running of a limitations period"). Because there is no basis for equitable tolling, the Court finds that Ms. Younger has failed to comply with the ADEA's statute of limitations.

The Court remains sensitive to Ms. Younger's *pro se* status, *see Erickson*, 551 U.S. at 94, and to the fact that ADEA's statute of limitations can be equitably tolled, *see Wash. Metro. Area Transit Auth.*, 160 F.3d at 752. But these principles do not warrant tolling here because the statute of limitations period has passed, and Ms. Younger makes no argument that she was misled by WTU. In fact, Ms. Younger communicated with EEOC regarding DCPS's alleged unlawful actions, and the Court therefore infers that Ms. Younger was fully aware of the EEOC process and its accompanying deadlines. The Court will dismiss all allegations that WTU or its officials discriminated against Ms. Younger in violation of ADEA.

**B. Claims Against D.C. Public Schools**

Ms. Younger's allegations are primarily directed against DCPS and its named officials. She alleges wrongful termination in violation of public policy, age discrimination and retaliation, defamation, breach of contract, breach of the covenant of good faith and fair dealing, and various statutory violations under ADEA, Title VII of the Civil Rights Act of 1964, 42

13

U.S.C. §§ 2000e *et seq.*,[6] the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, and the Genetic Information Nondiscrimination Act (GINA), Pub. L. No. 110-233, 122 Stat. 881 (2008). As discussed below, most of these claims are without merit; however, the Court will deny D.C.'s Motion to Dismiss with respect to Ms. Younger's discrimination and retaliation claims.

### 1. Non-Meritorious Claims

As a threshold matter, Ms. Younger has misidentified DCPS as a defendant in this case. DCPS is a subordinate agency of the District of Columbia and therefore cannot be sued as a separate entity. *Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, 7 (D.D.C. 2000) ("[I]n the absence of explicit statutory authorization, bodies with the District of Columbia government are not suable as separate entities." (internal alterations omitted) (citing *Milliner v. District of Columbia*, 1993 WL 837384, at *1 (D.D.C. May 17, 1993))). Accordingly, the Court construes Ms. Younger's claims as against the District of Columbia rather than DCPS.

Ms. Younger also errs insofar as she has sued DCPS Chancellor Kaya Henderson and twenty-six other DCPS officials for damages in their official capacities. It is well-established that "[w]hen sued in their official capacities, government officials are not personally liable for damages." *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996). A suit for damages against municipal officials in their official capacities "is thus equivalent to a suit against the municipality itself." *Id.* That certain named individuals might have knowledge of the facts does not remedy their improper identification as Defendants. Moreover, with the exception of actions attributed to Traci L. Higgins, Darrin Slade, Regina Youngblood, and Tanishia Williams-Minor, the Amended Complaint does not identify any specific actions taken

---

[6] Ms. Younger's Title VII claim is based on DCPS's alleged termination of her employment on account of her age. However, claims of age discrimination are cognizable under the ADEA rather than Title VII. Thus, the Court construes Ms. Younger's Title VII claim as arising under the ADEA.

14

by the named individual DCPS officials. Accordingly, the Court construes Ms. Younger's claims against individual Defendants as against the District of Columbia, and the individual DCPS officials will be dismissed from this suit.

Ms. Younger also presents various claims over which the Court lacks jurisdiction. For instance, absent a specific exemption, all claims arising out of the employment relationship between the District of Columbia and its employees fall within the exclusive jurisdiction of PERB. *See* D.C. Code § 1-617.02(b)(2) (charging PERB with the establishment of a labor-management relations program, including "[t]he resolution of unfair labor practice allegations"). Ms. Younger's common law claims, *i.e.*, breach of contract, breach of the covenant of good faith and fair dealing, and defamation, are based on DCPS's actions as her employer, and therefore fall within PERB's exclusive jurisdiction. Notably, "where PERB has jurisdiction over a claim, a litigant cannot bypass PERB's jurisdiction by bringing the same action as a common law claim." *Cooper v. AFSCME, Local 1033*, 656 A.2d 1141, 1144 (D.C. 1995). Therefore, the Court must dismiss all common law claims arising out of Ms. Younger's employment relationship with DCPS for lack of jurisdiction.

Further, Ms. Younger includes certain allegations that are either factually unsupported or not recognized by law. Ms. Younger alleges severe emotional distress, statutory penalties, violations of the collective bargaining agreement, intentional infliction of emotional distress, interference with contractual relations, negligence, invasion of privacy, defamation, fraud, misrepresentation, and violations of the ADA and GINA, *see* Am. Compl. ¶ 59, Prayer for Relief, but these claims do not include any further factual development. The Supreme Court has held that a complaint cannot survive a motion to dismiss if it merely offers "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

557).  Ms. Younger's status as a *pro se* plaintiff does not overcome the Supreme Court's direction that unsupported claims must be dismissed.

Ms. Younger also alleges that DCPS terminated her employment in violation of public policy.  But District of Columbia courts do not recognize a public policy exception to the at-will employment doctrine where the alleged violation can be vindicated by statute.  *Carter v. District of Columbia*, 980 A.2d 1217, 1226 (D.C. 2009).  Ms. Younger can bring claims against the District of Columbia under the ADEA or the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.*, and the availability of these statutory avenues precludes any reliance on untethered public policy.

Finally, the Court must dismiss claims for unliquidated damages against the District of Columbia because Ms. Younger failed to notify the D.C. Mayor's Office of her intention to sue for unliquidated damages within six months of her alleged injury.  *See* D.C. Code § 12-309.[7]  The D.C. Code requires prospective plaintiffs to notify the Mayor of such claims by describing "the approximate time, place, cause, and circumstances of the injury or damage."  *Id.*  Prior notice to the Mayor is a prerequisite to filing suit against D.C. for money damages, subject to certain exceptions that do not apply here.  *Campbell v. District of Columbia*, 568 A.2d 1076, 1077–78 (D.C. 1990) (citing *Gwinn v. District of Columbia*, 434 A.2d 1376, 1378 (D.C. 1981)).  The notice requirement is strictly enforced by D.C. courts.  *Id.* at 1078.

---

[7]  The District of Columbia Code provides that:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant . . . has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

D.C. Code § 12-309.

Here, the District of Columbia has submitted a business record from its Office of Risk Management, Tort Liability Division, which demonstrates that Ms. Younger did not comply with D.C. Code § 12-309. Ms. Younger does not contest her failure to provide adequate notice to the District of Columbia; instead, she responds that the D.C. Code's notice provision does not apply because she has alleged age discrimination under the ADEA. Her argument is accurate as far as it goes, but it ignores the fact that she pled common law claims against the District of Columbia. *See supra* at 14–15. The Court will dismiss all common law claims against D.C. for failure to comply with notice requirements.

### 2. Age Discrimination and Retaliation Claims

D.C. also contends that Ms. Younger has failed to state a *prima facie* case of age discrimination under the ADEA or retaliation under the D.C. Whistleblower Protection Act, D.C. Code § 1-615.53. As a preliminary matter, the Court notes that the Amended Complaint does not identify a statutory basis for Ms. Younger's retaliation claim. Nonetheless, the Court finds that any decision on Ms. Younger's claims of age discrimination and retaliation must await fact discovery. The Amended Complaint alleges sufficient factual matter to support claims of age discrimination and retaliation against the District of Columbia, as Ms. Younger generally avers that D.C. terminated her employment after she disclosed her age and reported substandard working conditions at Woodson 9th Grade Academy. Accordingly, the Court will deny D.C.'s Motion to Dismiss her age discrimination and retaliation claims.

## IV. CONCLUSION

The Court will dismiss Ms. Younger's claims against the Washington Teachers' Union because the duty of fair representation is only cognizable under the Comprehensive Merit Personnel Act, subject to the exclusive jurisdiction of the Public Employee Relations Board, and Ms. Younger did not file an EEO charge against the Union for failure to timely resolve her

grievance on the basis of her age. The Court will dismiss all common law claims against the District of Columbia. Ms. Younger's claims of age discrimination and retaliation against D.C. remain. A memorializing Order accompanies this Memorandum Opinion.


Date: July 25, 2014                                           /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge