UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMILLA YOUNGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 13-1296 (RMC) |
| ) | |
| DISTRICT OF COLUMBIA PUBLIC ) | |
| SCHOOLS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

Plaintiff Camilla Younger was employed by the District of Columbia Public Schools (DCPS) as an art teacher and attendance officer for over eighteen years. In 2010, she was discharged after she allegedly failed to disclose that she continued to hold a part-time, evening, teaching position at Roosevelt Senior Alternative High School (Roosevelt STAY) while on medical leave from her full-time teaching position at Woodson Ninth Grade Academy at Ron Brown Middle School. After the Court granted, in part, Defendants' motion to dismiss, *see* Memorandum Opinion [Dkt. 33], only Ms. Younger's claims of age discrimination under the Age Discrimination in Employment Act, 19 U.S.C. §§ 621 *et seq*. (2012) (ADEA) and retaliation under the District of Columbia Whistleblower Protection Act, D.C. Code § 1-615.53 (2012) (DCWPA) remain. DCPS now moves for summary judgment on the remaining claims, arguing that the undisputed facts show that Ms. Younger's termination and the denial of her request to transfer to a new school were not a result of age discrimination or retaliation. For the reasons set forth below, the Court will grant summary judgment to DCPS on Ms. Younger's retaliation claims and on her claim that Principal Darrin Slade discriminated against her when he terminated

1

her, but will deny summary judgment on Ms. Younger's claim of age discrimination when Principal Williams-Minor denied, or withdrew, an offer to transfer Ms. Younger to a new school.

## I.  FACTS

Ms. Younger served DCPS as a dual-certified art teacher and attendance officer from 1992 to 2010.  She holds a Bachelor of Fine Arts degree in Art Education and a Master's degree in Administration and Supervision.  Am. Compl. [Dkt. 2] ¶ 20.  Prior to the 2008-2009 school year, Ms. Younger taught full-time at the Woodson Senior High School (WSHS).  *Id*. ¶ 34.  Starting in 2007, Ms. Younger was also a part-time evening art teacher at Roosevelt STAY.  Ex. 1, Mot. for SJ, Deposition of Camilla Younger [Dkt. 58-1] at 93:8-11 (Younger Dep.).  After the 2007-2008 school year, WSHS was closed and the students were transferred to temporary locations.  Am. Compl. ¶ 34.  Ms. Younger asked to be transferred to the temporary high school location, but was instead moved to Woodson Ninth Grade Academy, located inside Ron Brown Middle School.  *Id*.

Ms. Younger's experience at Woodson Ninth Grade Academy was not ideal.  Ms. Younger alleges that the combined Ron Brown/Woodson school was "unsafe, overcrowded, hostile, unbearable[,] . . . school violence increase[d] daily (kids fighting daily, violence against teachers, destruction of property, fires . . .)," and that she did not receive the institutional support necessary to teach students effectively.  *Id*. ¶ 37.  Ms. Younger describes multiple instances of physical altercations with students during the 2008-2009 school year, *see id*. ¶¶ 39-40, and states that she submitted incident reports to DCPS regarding these events.  *Id*. ¶ 40.  Although she reported the incidents to her supervisors, the solutions were not satisfactory, in that offending students were merely removed from her classroom for a few days.  *Id*. ¶¶ 39-40.

At the end of the 2008-2009 school year, when DCPS teachers could apply to transfer to new schools, Ms. Younger applied and was accepted for a position at another school.

2

*Id*. ¶ 41.  However, Darrin Slade, Principal of Woodson Ninth Grade Academy, convinced Ms. Younger to return to Woodson Ninth Grade Academy and assured her that he would authorize an immediate transfer if her working conditions did not improve.  *Id*.

Ms. Younger states that her working conditions worsened in the next school year.  On September 1, 2009, she was "physically assaulted and injured by special education high school students with varied learning disabilities and emotional problems [who] . . . [ran] over [her] at the door, [and knocked] [her] to the floor," causing injuries that required her to take medical leave.  *Id.* ¶ 42; *see also* Ex. 2, Mot. for SJ [Dkt. 58-1] (Sept. 1, 2009 Report of Injury).  In a memorandum dated September 30, 2009, Ms. Younger was informed of "Classroom Management Concerns" raised by Principal Slade, including failing to keep students occupied and engaged during the class period and failing to "maintain appropriate disciplinary data."  Ex. 3, Mot. for SJ [Dkt. 58-1] at 1 (Sept. 30, 2009 Slade Memo).  Ms. Younger states that she asked Principal Slade for an immediate transfer and applied for workers' compensation following the September 1, 2009 altercation with the hope of receiving a reasonable accommodation that would allow her to continue working at Woodson Ninth Grade Academy.  Am. Compl. ¶¶ 43-44.  In early October 2009, Ms. Younger stopped reporting for work at Woodson Ninth Grade Academy, *see* Ex. 4, Mot. for SJ [Dkt. 58-1] at 1 (DCPS Response to Request for Information); Younger Dep. 262:15-263:4, but she continued to teach at Roosevelt STAY during the evening.  *See* DCPS Response to Request for Information at 2.  Ms. Younger did not return to the Woodson Ninth Grade Academy for the remainder of the 2009-2010 school year.

During the summer of 2010, Ms. Younger interviewed with several DCPS principals for a new position.  Among those with whom she talked was Tanisia Williams-Minor, Principal at the Youth Engagement Academy.  Am. Compl. ¶ 45.  Ms. Younger alleges that after

3

her interview with Principal Williams-Minor,[1] she was offered a part-time position as art teacher at the Youth Engagement Academy and was introduced to the Assistant Principal as Principal Williams-Minor's "new art teacher." *Id*. Ms. Younger further alleges that she and Principal Williams-Minor met on multiple occasions to discuss the position and at the last of these meetings Principal Williams-Minor asked for the spelling of Ms. Younger's name, her address, and her date of birth to complete various personnel forms. *Id*. Ms. Younger alleges that "[w]hen [she] gave [Principal Williams-Minor] [her] date of birth she was noticeably shocked, breathless (she place[d] her hand over her heart) and was speechless, and gasping for breath. Her facial expression and [demeanor] change[d]." *Id.*

DCPS disagrees, arguing that Ms. Younger was never offered the position at the Youth Engagement Academy, *see* DCPS Response to Request for Information, because Principal Williams-Minor and the principal from Jefferson Middle School decided to share a single full-time art teacher and Ms. Younger was seeking a part-time position. *See* Am. Compl. ¶ 57. Ms. Younger admits that the teacher hired for the position was full-time to serve both schools, but alleges that Principal Williams-Minor chose to withdraw her offer of a transfer because of Ms. Younger's age. *See id*. DCPS concedes that the teacher hired to fill the position was 23 years old (Ms. Younger was 63), but insists that Principal Williams-Minor's decision was based on the fact that the Principal had previously worked with the young art teacher. *See* DCPS Response to Request for Information. Because Principal Williams-Minor withdrew, or did not offer, the position to Ms. Younger and it was too late to apply to transfer elsewhere, Ms. Younger was unable to transfer to a new school before the 2010-2011 school year. *See id*.

---

[1] Because each principal was involved in different allegedly discriminatory acts, the Court will distinguish Principal Slade and Principal Williams-Minor throughout.

Principal Slade learned in August 2010 that Ms. Younger had continued to teach at Roosevelt STAY during the period she claimed she was unable to return to Woodson Ninth Grade Academy. On August 16, 2010, Principal Slade notified Ms. Younger that she would be terminated effective August 27, 2010. *See* Mot. for SJ, Ex. 6 [Dkt. 58-1] (Notice of Termination).

After exhausting her administrative remedies, and acting *pro se,* Ms. Younger filed a Complaint on August 27, 2013, *see* Compl. [Dkt. 1], and an Amended Complaint shortly thereafter, *see* Am. Compl. [Dkt. 2]. On July 25, 2014, the Court granted in part and denied in part Defendants' Motion to Dismiss, dismissing all claims except Count 1, alleging that DCPS discriminated against Ms. Younger due to her age when Principal Williams-Minor withdrew or refused to grant her a transfer and when Principal Slade discharged her; and Count 5, alleging that DCPS retaliated against Ms. Younger for pursuing her workers' compensation claim. *See* Memorandum Opinion [Dkt. 33]; Order [Dkt. 34]. DCPS filed a Motion for Summary Judgment on the remaining claims on May 19, 2016. *See* Mot. for SJ [Dkt. 58]. Ms. Younger, through counsel, opposed, *see* Opp'n [Dkt. 62], and DCPS replied. *See* Reply [Dkt. 65]. The motion is ripe for review.

## II.  LEGAL STANDARDS

### A. Motion for Summary Judgment under Fed. R. Civ. P. 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). On summary judgment, the district judge must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

### B. Age Discrimination under ADEA

The Age Discrimination in Employment Act prohibits discrimination against federal employees based on age. 29 U.S.C. § 633a. The "two essential elements of a discrimination claim" under the ADEA are "that [(1)] the plaintiff suffered an adverse employment action [(2)] because of the plaintiff's . . . age." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (collecting cases). Claims under the ADEA are subject to the analytical framework adopted first in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015) (citing *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005)).

Under *McDonnell Douglas*, the plaintiff must first establish by a preponderance of the evidence a *prima faci*e case of discrimination by showing (1) that he is a member of a protected class; (2) that he suffered an adverse personnel action; (3) under circumstances giving rise to an

inference of discrimination. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999) (*McDonnell Douglas* applies to Title VII claim); *see also Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006) (*McDonnell Douglas* applies to ADEA claim); *Stella v. Mineta*, 284 F.3d 135, 144-46 (D.C. Cir. 2002) (under the ADEA, a plaintiff must show that there is some causal connection between the adverse action and the plaintiff's age).

Once a plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas*, 411 U.S. at 802; *see also Barnette*, 453 F.3d at 515 (shifting burden applies to ADEA claims). If the defendant meets this burden, then the plaintiff must demonstrate that the legitimate reasons offered by the employer were not its true reasons, but were a "pretext" for discrimination. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804.

In a motion for summary judgment, a court does not focus significantly on the plaintiff's burden to make out a *prima facie* case. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). The D.C. Circuit stated that this "judicial inquiry into the *prima facie* case is usually misplaced" because "[i]n the years since *McDonnell Douglas,* the Supreme Court's decisions have clarified that the question whether the employee made out a *prima facie* case is almost always irrelevant." *Id.* "[O]nce the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a *prima facie* case is 'no longer relevant' and thus 'disappear[s]' and 'drops out of the picture.'" *Id.* at 493-94 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510, 511 (1993); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)).

> [I]n considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's

7

>asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

*Brady*, 520 F.3d at 493-94.

### C. Retaliation under the DCWPA

The DCWPA protects employees of the D.C. government by ensuring they are "free to report waste, fraud, abuse of authority, violations of law, or threats to public health or safety without fear of retaliation or reprisal." D.C. Code § 1-615.51. City employers are prohibited from taking an adverse action against employees in retaliation for protected disclosures made under the DCWPA. *See* D.C. Code § 1-615.52, 53. A "protected disclosure" is

>Any disclosure of information, not specifically prohibited by statute, without restriction to time, place, form, motive, context, forum, or prior disclosure made to any person by an employee or applicant, including a disclosure made in the ordinary course of an employee's duties by an employee to a supervisor or a public body that they employee reasonably believes evidences:
>
>(A) Gross mismanagement;
>
>(B) Gross misuse or waste of public resources or funds;
>
>(C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;
>
>(D) A violation of a federal, state, or local law, rule, or regulation, . . . ; or
>
>(E) A substantial and specific danger to the public health and safety.

D.C. Code § 1-615.52(a)(6).

The DCWPA also uses a burden shifting framework to determine liability.

>[A]fter a plaintiff makes a *prima facie* case that h[er] 'protected disclosure' was a 'contributing factor' in h[er] dismissal, the burden shifts to the defendant to show by clear and convincing evidence that the plaintiff's dismissal would have occurred for 'legitimate, independent reasons' even if [s]he had not engaged in activities protected under the [DCWPA].

*Crawford v. District of Columbia*, 891 A.2d 216, 219 (D.C. 2006).  A contributing factor is "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision."  D.C. Code § 1-615.52(a)(2).  The DCWPA, like other whistleblower statutes, only shields an employee from an adverse employment action "'to the extent the record supports a finding that [s]he would not have been disciplined except for h[er] status as a whistleblower.'"  *Crawford*, 891 A.2d at 222 (quoting *Carr v. Social Security Admin.*, 185 F.3d 1318, 1325 (Fed. Cir. 1999)).  At summary judgment a court reviews the record as a whole to determine whether, based on undisputed facts, "a reasonable jury [could] conclude that retaliation played a contributing role in [the plaintiff's] termination."  *Payne v. District of Columbia*, 808 F. Supp. 2d 164, 170 (D.D.C. 2011).

### III.  ANALYSIS[2]

Ms. Younger's Opposition completely ignores the arguments advanced by DCPS with regard to her claims that Principal Slade retaliated against her for engaging in protected activity and/or discriminated against her because of her age when he discharged her.  She focuses exclusively on the contested facts that prevent summary judgment on her claim that Principal Williams-Minor discriminated against Ms. Younger because of her age when she withdrew the job offer to teach at the Youth Engagement Academy.  The law is clear that when a party fails to respond to arguments in a motion for summary judgment, the points are conceded.  *See Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997) (declining to consider argument that was raised in only "a cursory fashion"); *Ry. Labor Execs.' Ass'n v. U.S. R.R. Ret. Bd.*, 749 F.2d 856, 859 n.6 (D.C. Cir. 1984) ("We decline to resolve this issue on the basis of

---

[2] Federal court jurisdiction arises under Title VII, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331, 1343, and 1367.  Because the alleged discrimination occurred in the District of Columbia, and Plaintiff was employed by the District of Columbia Public Schools, venue is proper here as well.  *See* 28 U.S.C. § 1391(b)(1) and (2).

briefing which consisted of only three sentences in the [party's] brief and no discussion of the relevant statutory text, legislative history, or relevant case law."). Thus, Ms. Younger has conceded that her claims involving actions by Principal Slade cannot be proved. Accordingly, the Court will enter judgment for Defendant.[3]

However, material facts remain in dispute concerning whether Principal Williams-Minor denied Ms. Younger a position at the Youth Engagement Academy because of her age. DCPS argues that the undisputed facts show that Principal Williams-Minor selected another candidate for the position due to her prior history working with that teacher and because the teacher that was selected wanted a full-time position, while Ms. Younger was looking for a part-time position. Ms. Younger contests those facts, citing her statements in her Amended Complaint as record evidence that she was originally offered the position, but it was only withdrawn when Principal Williams-Minor learned Ms. Younger's age.

While a nonmoving plaintiff may not "rely upon the mere allegations or denials of her pleadings" to defeat a summary judgment motion, *McCormick v. District of Columbia*, 899 F. Supp. 2d 59, 64 (D.D.C. 2012), a verified complaint[4] may "be treated as the functional equivalent of an affidavit to the extent it satisfies the standards explicated in Rule 56(e)." *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991); *see also Neal*, 963 F.2d at 457-58; *accord Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987);

---

[3] Although the Court will enter judgment in favor of DCPS on Ms. Younger's claims that retaliation and/or age discrimination caused her discharge by Principal Slade, it cannot be determined from the record that her termination by Principal Slade would still have occurred if Ms. Younger satisfies a factfinder that Principal Williams-Minor denied her a job at the Youth Engagement Academy because of her age. DCPS does not argue that Principal Slade would have retained such authority if Ms. Younger had earlier transferred to another school. This issue may be relevant to Ms. Younger's damages if she prevails on her remaining claim.

[4] A verified complaint is a complaint sworn under penalty to tell the truth and signed by the author. *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992).

*Lew v. Kona Hosp.,* 754 F.2d 1420, 1423 (9th Cir. 1985). Rule 56(e) permits the use of affidavits when they are "made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Ms. Younger was appearing *pro se* when she filed her Complaint and Amended Complaint and she prepared and signed both documents herself. Because Ms. Younger was proceeding *pro se,* the Court construes her compliance with the rules of civil procedure with a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citations omitted)). Appearing before the Court without counsel at the beginning of this case, Ms. Younger argued ably concerning the denial of a transfer. For its part, the District of Columbia withheld the age of the successful teacher until the point of summary judgment briefing. For these purposes, therefore, the Court will treat the Amended Complaint as Ms. Younger's affidavit indicating the facts about which she intends to testify at trial.

Because the material facts concerning the denial of Ms. Younger's application for a transfer are contested, the record does not admit a decision on whether DCPS discriminated against Ms. Younger due to her age when Principal Williams-Minor withdrew or refused to offer a transfer to Ms. Younger to a new school. The Court will deny summary judgment to DCPS on Ms. Younger's claim that Principal Williams-Minor discriminated against her on the basis of her age.

## IV.  CONCLUSION

The Court will grant in part and deny in part the District of Columbia's motion for summary judgment. The Court will grant summary judgment to the District of Columbia on Ms. Younger's claims that Principal Slade retaliated and/or discriminated against Ms. Younger when

11

he discharged her but will deny summary judgment on Ms. Younger's claim that Principal Williams-Minor discriminated against Ms. Younger because of her age in deciding to withdraw or refuse to offer a transfer to a new school. A memorializing Order accompanies this Memorandum Opinion.

Date: July 21, 2017

/s/
ROSEMARY M. COLLYER
United States District Judge