UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMILLA YOUNGER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 13-1296 (RMC) |
| DISTRICT OF COLUMBIA PUBLIC SCHOOLS, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

During a two-day bench trial on September 11 and 12, 2018, Camilla Younger and Tanishia Williams testified about the events surrounding Ms. Younger's application and interview for the position of art teacher at the Youth Engagement Academy, part of the District of Columbia Public Schools (DCPS). Ms. Younger alleges that age discrimination caused Principal Williams to withdraw her offer of a position at the Youth Engagement Academy. As Plaintiff, Ms. Younger bears the burden of proof to show that it is more likely than not that she did not get the position at the Youth Engagement Academy because of her age. After closely considering the evidence presented by Ms. Younger and DCPS, the Court finds that Ms. Younger has not met her burden; it will enter judgment in favor of the District of Columbia.

**I. FINDINGS OF FACT**

1. Ms. Younger was employed by the District of Columbia Public Schools from approximately 1992 to 2010. 9/11/18 Tr. at 34.

2. At all relevant times, Ms. Younger was a certified art teacher and attendance officer. *Id.* at 17.

1

3. Ms. Younger worked as a full-time art teacher at H.D. Woodson High School in Northwest Washington, D.C. until the school's grades were dispersed to other DCPS schools to allow for renovations to the building. *Id*. at 35-36.

4. Ms. Younger was transferred with the 9th Grade to Ron Brown Middle School in Northeast Washington, D.C. *Id*. at 36. The Woodson 9th Grade was put on the third floor of the Middle School, requiring Ms. Younger to climb the stairs frequently. *Id*. at 37.

5. Ron Brown Middle School was an uncomfortable environment for Ms. Younger. During the 2008-2009 school year, she requested a transfer from her principal, Daren Slate. *Id*. at 38. Principal Slate convinced Ms. Younger to remain at Ron Brown Middle School for the 2009-2010 school year, promising that if the situation did not improve he would grant her a transfer after that school year. *Id*.

6. Ms. Younger was injured at Ron Brown Middle School in the fall of 2009 and did not return to Ron Brown after October for the rest of the 2009-2010 school year. *Id*. at 39-40.

7. During that same 2009-2010 school year, Ms. Younger was also working as a part-time art teacher in the evenings at Roosevelt STAY High School in Northwest Washington, D.C. *Id*. at 40-41. A STAY high school in the DCPS system is a School To Aid Youth; it offers evening classes for older students and adults. *Id*.; *see also* 9/12/18 Tr. at 11.

8. During the 2009-2010 school year, Ms. Younger sought a different school at which she might teach art so that she could transfer away from Ron Brown. 9/11/18 Tr. at 41.

9. On July 5, 2010, Whitney Miller, DCPS School Staffing Specialist, advised Ms. Younger that there was an opening for an art teacher at the Youth Engagement Academy. Younger Ex. 7 at 11 (July 5, 2010 Email to Camilla Younger from Whitney Miller); *see also* 9/11/18 Tr. at 42.

10. Tanishia Williams, then known as Tanishia Williams-Minor, was the principal at Spingarn STAY High School during the 2009-2010 school year. 9/11/18 Tr. at 43; 9/12/18 Tr. at 8-9. Principal Williams was appointed to be the first principal at the Youth Engagement Academy, a daytime high school, when it opened in September 2010 for the 2010-2011 school year. 9/12/18 Tr. at 8. Sometime after September 2010, the Youth Engagement Academy was renamed Washington Metropolitan High School. 9/11/18 Tr. at 44. Both names are used in the record.

11. Ms. Younger was interviewed by Principal Williams for the open position of art teacher at the Youth Engagement Academy on at least one occasion on July 12, 2010. *Id*. at 45-46; *see also* Younger Ex. 7 at 2 (July 11, 2010 Email to Camilla Younger from Tanishia Williams); 9/12/18 Tr. at 9, 19-20.

12. Because it was originally anticipated that the art teacher at the Youth Engagement Academy would hold only a part-time position, Principal Williams encouraged Ms. Younger to apply also for a part-time position teaching art with Principal Stephanie Patton at Jefferson Junior High, so that Ms. Younger might work full-time. 9/11/18 Tr. at 55; 9/12/18 Tr. at 12, 18, 31-32; *see also* Younger Ex. 7 at 1 (July 12, 2010 Email from Tanishia Williams to Stephanie Patton).

13. Principal Patton interviewed Ms. Younger for the part-time art teacher position at Jefferson Junior High after Ms. Younger contacted her about the post. 9/11/18 Tr. at 46, 78. That interview went well and Ms. Younger recalls that afterwards she contacted Principal Williams to report on it. *Id*.

14. At some point in July or early August 2010, the art teacher position at the Youth Engagement Academy was converted to a full-time position. *Id*. at 46, 55-56, 82; 9/12/18 Tr. at 19-20. When Ms. Younger contacted Principal Williams after interviewing with

Principal Patton at Jefferson Junior High, Principal Williams told her that the position at the Youth Engagement Academy would now be full-time and verified that Ms. Younger was still interested in the position. 9/11/18 Tr. at 46. Ms. Younger was willing to work full-time, as she had at Woodson and Ron Brown. *Id*.

15. As outlined below, during the interview process, Principal Williams made statements sufficient to constitute an offer of employment to Ms. Younger. *Id*. at 46-47, 86. However, she did not provide a written offer of employment to Ms. Younger. *Id*. at 79-80.

16. Ms. Younger recalls that after an interview with Principal Williams, the principal introduced Ms. Younger to the Vice Principal at Spingarn STAY and another individual in the office as "our next art teacher." *Id*. at 47.

17. Ms. Younger recalls that Principal Williams asked her a series of questions so that the principal might complete DCPS paperwork related to the offer of employment. As part of those questions, Principal Williams asked Ms. Younger's age or birth date and put her hand to her chest, gasping, when she learned that Ms. Younger was 63 years old. *Id*. at 48-50, 57, 84-86. Principal Williams was approximately 32 years old in the summer of 2010. 9/12/18 Tr. at 65-66.

18. Because the deadline for school-to-school transfers was nearing, Ms. Younger went to the DCPS Human Resources office in August to inquire about the status of her paperwork to transfer to the Youth Engagement Academy. 9/11/18 Tr. at 50, 93, 95. Ms. Younger was told that there was no paperwork and no transfer had been initiated. *Id*.

19. Ms. Younger called Principal Williams from the Human Resources office to ask about the transfer and Principal Williams responded that she had intended to call Ms. Younger. Asked what that meant, Principal Williams finally told Ms. Younger that a different

individual had been hired for the art teacher position at the Youth Engagement Academy. *Id*. at 50-51, 95-97.

20. Principal Williams hired Kimberly Moye as the full-time art teacher at Youth Engagement Academy. 9/12/18 Tr. at 17-18. Ms. Moye was in her 30s when she was hired as a full-time art teacher at the Youth Engagement Academy. *Id*. at 66.

21. Ms. Moye had worked with Principal Williams at Spingarn STAY High School. *Id*. at 18. Ms. Moye was looking for a full-time position. *Id*. at 18, 65. Ms. Moye applied for the position at the Youth Engagement Academy after Principal Williams told her that it had been upgraded to a full-time position. *Id*.

22. Principal Williams testified that she hired Ms. Moye into the full-time art teacher position because "she was a better fit" for the job. *Id*. at 18. Principal Williams further stated that she was familiar with how Ms. Moye interacted with students and her general capacity as a teacher. *Id*. Principal Williams also testified that it was "easier to have [Ms. Moye] migrate over to [Youth Engagement Academy] with the rest of the staff [from Spingarn STAY] and she was a good fit." *Id*. at 65.

## II. LEGAL STANDARD

The Age Discrimination in Employment Act (ADEA) prohibits discrimination against employees based on age. 29 U.S.C. § 633a. A winning plaintiff must show by a preponderance of the evidence that the plaintiff's age was the but-for cause of the adverse employment action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."); *see also Miller v. Cigna Corp.*, 47 F.3d 586 (3d. Cir. 1995) (holding that "plaintiff must prove by a preponderance of the

evidence that age played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process").

As relevant to Ms. Younger's allegations, the elements of an ADEA claim are that: (1) she was 40 years of age or older at the time of the employment action; (2) the employment action was legally "adverse," such as a refusal to hire; and (3) but for Mr. Younger's age, she would have been transferred to the Youth Engagement Academy. Once a plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006) (shifting burden applies to ADEA claims). If the defendant meets this burden, then the plaintiff must demonstrate that the legitimate reason(s) offered by the employer were not its true reason(s), but a "pretext" for discrimination. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804.

## II. ANALYSIS

Having carefully listened to the testimony presented at trial and considered all the evidence, the Court finds that Ms. Younger has proven the first two elements of her claim but falls short on the issue of but-for causation. The District of Columbia does not dispute and the record shows that Ms. Younger was older than 40 years of age in August 2010 when she was not selected to transfer to the Youth Engagement Academy and that the selecting official and the selected candidate were both younger than 40 years of age.

The Court credits Ms. Younger's testimony about the interview process and the offer of employment from Principal Williams. While Principal Williams disputes that she made an official offer of employment to Ms. Younger—because she did not have the authority to send such a letter—the Court finds that the exchanges between Ms. Younger and Principal Williams,

6

whatever their precise details, were sufficiently positive and concrete to allow Ms. Younger reasonably to conclude that she had received an offer to teach art at the Youth Engagement Academy on a full-time basis. That offer was silently withdrawn when Principal Williams decided to hire Ms. Moye for the position, a change that the principal inexplicably failed to communicate timely to Ms. Younger so that Ms. Younger might have sought another post. The loss of the ability to transfer to the art teacher position at the Youth Engagement Academy was an adverse employment action against Ms. Younger.

Specifically, Principal Williams either corroborates or does not recall enough to deny the more salient aspects of Ms. Younger's testimony. Both witnesses were as honest as they could be, given the passage of time. As the injured party, there is no doubt that Ms. Younger remembers more clearly; her recollection has not materially changed since her complaint was filed. For the most part, Principal Williams testified that the events recalled by Ms. Younger could have happened as Ms. Younger described.

For instance, Principal Williams remembers referring Ms. Younger to the principal of Jefferson Middle School to interview, 9/12/18 Tr. at 31, and agrees "[i]t's possible" that she instructed Ms. Younger to report back to her after that interview. *Id.* As to whether, during an interview with Ms. Younger, Principal Williams asked for the correct spelling of Ms. Younger's name and her birth date, Principal Williams testified that she might have asked for name and contact information if she were going to recommend the individual for the position but probably would not have asked for a birth date. *Id*. at 23-24 ("That would have been a process for an interview if I was going to make a recommendation, then I would have reached out to make sure I had the spelling of her name correct to send that information to the staffing specialist. . . . I don't believe I would have asked the birthday."). Principal Williams had no recollection of that conversation with Ms. Younger, however; and instead stressed that her hiring

7

process was to interview candidates, choose one to recommend, and send the necessary information for the recommendation to her staffing specialist by phone or email. *Id.* at 35.

Principal Williams does not specifically recall stating "I have accepted you as the art teacher as our new art teacher," *id*. at 33; and testified that she would not have verbally offered Ms. Younger the position. *Id*. at 49-50 ("I never offered you a job because it wasn't in my, it wasn't in my power to do so."). The narrow contours of this denial were evident in Principal Williams' statement that "official offers were never made through the principals. The most I would have done or could have done was said that I would recommend her to the staffing specialist." *Id.* at 17. The Court does not consider Ms. Younger's recollection of the events to be entirely inconsistent with Principal Williams' stated process. Ms. Younger testified that Principal Williams made a verbal offer of employment and collected some information from her to complete paperwork. These events could have taken place in the context of Principal Williams deciding to recommend Ms. Younger, telling her as much, and collecting the necessary information to send to the staffing specialist to finalize the offer. The Court finds that Principal Williams communicated such an intention to Ms. Younger and therefore sought the specifics of her name and birth date.

Similarly, Principal Williams did not recall introducing Ms. Younger to her vice principal and secretary as their "new art teacher" but agreed "I may have introduced you to the two of them, but . . . [without confirmation from a staffing specialist], I don't believe I would have introduced you as an employee." *Id.* at 33. Further, Principal Williams agreed that "[i]t's possible, yes," that she invited Ms. Younger to tour the building where the Youth Engagement Academy would be located. *Id.* at 46. Principal Williams also did not specifically recall what actions she might have taken once the art teacher position was converted from part-time to full-time. *Id*. at 48-49 ("Once I was able to convert that .5 position to a full-time position, it became

8

a full-time position and I may have alerted candidates of that."); *see also id.* at 50 ("I may have said to you 'hi, I have now been advised that I can have a full-time position.'").

As to the telephone call from Ms. Younger to Principal Williams when Ms. Younger was informed by DCPS that no transfer paperwork for her had been submitted, Principal Williams could not remember it and then added, "as per your question[,] if we did have a phone call and I said to you I meant to call you, then it's possible that I was suppose[d] to call and I didn't follow through, but it sounds like perhaps we did speak. But I don't recall." *Id.* at 57-58.

Asked why she hired Ms. Moye and not Ms. Younger, Principal Williams replied:

> When I initially held interviews for the art position it was a .5 [half-time] position. . . . And Ms. Moye was not interested in job sharing. So she was not interested in working between two different schools.
>
> . . .
>
> [W]e were able to make the position a full-time position. So it was something that was more appealing to Ms. Moye and I had worked with Ms. Moye before and I could attest to her interactions with students. So it was easier to have her also migrate over to [Youth Engagement Academy] with the rest of the staff and she was a good fit.

*Id*. at 65. At that time, Ms. Moye was in her thirties. *Id.* at 66. As to why it was "easier," Principal Williams added, "I was speaking more to the fact that I could attest to her work with students and I knew that she originally wanted a full-time job." *Id.* at 68-69 ("Ms. Moye was a teacher that I was already familiar with.").

The Court concludes that Ms. Younger left her last meeting with Principal Williams with the legitimate expectation that she would be hired as the new art teacher for the Youth Engagement Academy. Ms. Younger had interviewed with two principals in anticipation of job sharing and was then advised that the Youth Engagement Academy position was now full-time. She was asked the correct spelling of her name and her birthdate for submission of her

information to DCPS and she was introduced to other school personnel. However, Principal Williams did not follow through. Instead, when Ms. Moye learned that the job would be full-time at the Youth Engagement Academy, she apparently applied, was interviewed by Principal Williams, and was recommended by Principal Williams for transfer, along with other members of the Spingarn STAY staff.

Ms. Younger testified that Principal Williams was shocked when she learned of Ms. Younger's age and, therefore, contends that her age was the reason Principal Williams rescinded the offer. Certainly Ms. Younger has presented a *prima facie* case. In response, Principal Williams testified that she chose Ms. Moye for the art teacher position because the principal believed Ms. Moye was a better fit for the position and was familiar with her abilities to engage students, having worked with her at Spingarn STAY.

The ADEA requires that age be the but-for cause for the adverse employment action. *See Gross*, 557 U.S. at 176. Therefore, for Ms. Younger to carry her burden of proof, the evidence must show that, had it not been for Ms. Younger's age, she would have received the position of art teacher at the Youth Engagement Academy. Principal Williams articulated four reasons for hiring Ms. Moye over Ms. Younger: (1) Principal Williams had worked with Ms. Moye before; (2) Principal Williams was familiar with Ms. Moye's teaching skills and how she interacted with students; (3) it would be easier to migrate Ms. Moye to the Youth Engagement Academy because other Spingarn STAY employees were also transferring; and (4) Ms. Moye was a better fit for the position.

Even crediting Ms. Younger's testimony that Principal Williams was shocked upon learning Ms. Younger's age, Ms. Younger has failed to discredit Principal Williams' legitimate non-discriminatory reasons for why she recommended Ms. Moye—who only applied after the position became full-time—despite Principal Williams having given every indication

10

that she would recommend Ms. Younger. While the reasons provided by Principal Williams are not exceptionally strong, Ms. Younger did not elicit any testimony from Principal Williams or provide any other evidence to raise the inference that Principal Williams' reasons were pretextual. The Court finds that Principal Williams' testimony reflects that she would have hired Ms. Moye for the art teacher position when it was originally part-time, but-for the fact that Ms. Moye was unwilling to accept a part-time position. Therefore, it is understandable that once the position was converted to full-time, Principal Williams would again be interested in hiring Ms. Moye. It is unfortunate that in the meantime Principal Williams made a statement to Ms. Younger sufficient to lead her to believe that she had been offered the position and Principal Williams never followed up to withdraw that unofficial offer.

However, Ms. Younger has failed to prove that the offer to transfer was rescinded "because of" her age or that her age was a determinative factor. The Court finds that Principal Williams' explanation of why she ultimately hired Ms. Moye constitutes a legitimate and non-discriminatory reason for her action. What was unreasonable and totally unexplained was the principal's failure to give Ms. Younger notice of her decision, which Principal Williams does not deny. Nonetheless, considering all the evidence, the Court finds that Ms. Younger has failed to offer sufficient proof that it was her age, and not Principal Williams' preference for Ms. Moye's known teaching skills, the bureaucratic ease with which to add her to the transferees from Spingarn STAY, and her "good fit" with the rest of the transferring staff, that caused the failure to transfer Ms. Younger to the Youth Engagement Academy.

## IV.  CONCLUSION

The Court will enter judgment in favor of the District of Columbia.  A memorializing Order accompanies this Memorandum Opinion.

Date: November 28, 2018

  ROSEMARY M. COLLYER
  United States District Judge